**E-FILED**
Monday, 15 June, 2009  10:06:37 AM
Clerk, U.S. District Court, ILCD

1
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

2

3  UNITED STATES OF AMERICA,   ) Docket No. 07-10110
                               )
4        Plaintiff,            )
   vs.                         )  Peoria, Illinois
5                              )  **December 2, 2008**
   BRIAN L. BURNSIDE,          )
6                              )
         Defendant.            )
7  _____)

8

9                 RECORD OF PROCEEDINGS
                  **SENTENCING HEARING**
10     BEFORE THE HONORABLE JOE BILLY MCDADE
           UNITED STATES DISTRICT JUDGE

11                 THE APPEARANCES

12              BRADLEY MURPHY, ESQ.
                Assistant U.S. Attorney
13        One Technology Plaza, Suite 400
                 211 Fulton Street
14               Peoria, IL  61602
              On behalf of the Plaintiff

15

16              BRUCE C. COWAN, ESQ.
                  6031 W. Dempster
17            Morton Grove, IL  60053
              On behalf of the Defendant

18

19

20
                Nancy Mersot, CSR, RPR
21        United States District Court Reporter
                100 N.E. Monroe Street
22               Peoria, IL  61602

23

24  Proceedings recorded by mechanical stenography,
    transcript produced by computer-aided transcription.
25

1          (Proceedings were held in open court.)

2          THE CLERK:  Call the case of the United

3  States of America v. Brian L. Burnside, criminal

4  case 07-10010.

5          Will counsel please enter their appearances.

6          MR. MURPHY:  Brad Murphy for the United

7  States.

8          MR. COWAN:  Bruce Cowan for Brian L.

9  Burnside.

10          THE COURT:  The record will reflect the

11  presence of the defendant.

12          Back on July 30th of this year, the

13  defendant plead guilty to an indictment charging him

14  with possession of cocaine base or crack cocaine

15  with intent to distribute.  This was without the

16  benefit of a plea agreement.  The matter is before

17  the Court today for sentencing.  The Presentence

18  Investigation Report was furnished to both sides for

19  comment and the comments received from the parties

20  is summarized in the addendum to the report found at

21  pages -- page 29.  The addendum reflects

22  communication from the Government it has no

23  objections to the report.

24          Is that still the case, Mr. Murphy?

25          MR. MURPHY:  It is, Your Honor.

1       THE COURT:  And Mr. Cowan, have you had a
2  reasonable opportunity to review the Presentence
3  Report with your client?
4       MR. COWAN:  Yes, Your Honor.  I drove down
5  and we went over it for several hours.
6       THE COURT:  The addendum indicates that you
7  have communicated to the Probation Department that
8  your client has no objections to the report.  Is
9  that still the case?
10      MR. COWAN:  That is still the case, Your
11  Honor.  I also added several paragraphs.
12      THE COURT:  Mr. Burnside, have you had a
13  chance to read the Presentence Report and discuss it
14  with your lawyer?
15      THE DEFENDANT:  Yes, sir.
16      THE COURT:  And you agree with him that you
17  have no objections to the report.
18      THE DEFENDANT:  I challenged some things
19  that was in it but he later added some paperwork to
20  it and I just got a response that both parties
21  had -- him and the district attorney agreed to it.
22      THE COURT:  So they had been worked out?
23      THE DEFENDANT:  I think.
24      THE COURT:  All right.  The Presentence
25  Report is hereby placed in the record under seal, on

1  appeal counsel shall have access of the sealed

2  report but not the recommendation section.   There

3  being no objections to the report that have not been

4  resolved, the Court adopts the Presentence Report

5  without change.

6         The Court finds that the defendant's

7  advisory guideline range is as set out in the

8  report.  His total offense level as reflected in

9  paragraph 32 is 34; his Criminal History Category as

10 reflected in paragraph 65 is Roman Numeral VI; and

11 his advisory imprisonment range as reflected in

12 paragraph 118 is 262 to 327 months.  However, as

13 reflected in paragraph 117, by statute, there is a

14 mandatory term of imprisonment of life and because

15 the statutory prevails, the guideline range is

16 mandatory life imprisonment.  Supervised release

17 range is ten years to life.  Fine range is 17,500 to

18 $8 million.  There is a special assessment of $100.

19 And restitution is inapplicable.

20        Does the Government have any objection to

21 the Court's finding as to the defendant's advisory

22 guideline range?

23        MR. MURPHY:  No, Your Honor.

24        THE COURT:  Does defense counsel?

25        MR. COWAN:  No, Your Honor.

1          THE COURT:  Anything in aggravation by the

2     Government?

3          MR. MURPHY:  Do not have any evidence to

4     present.

5          THE COURT:  Anything in mitigation by

6     defense counsel?  In that connection I have received

7     and have had a chance to read various letters sent

8     on the defendant's behalf, by him, and his family

9     and friends.

10          Anything else in mitigation?

11          MR. COWAN:  Yes, Your Honor.  As I added, I

12     had no objections after several hours of going over

13     with my client and explaining the legal reasons that

14     we have no objections.  The Court should know and be

15     it known that upon his arrest, my client was

16     cooperating.  He did tell the authorities who was

17     the source of where he got the cocaine.  He also

18     picked out of a photo ID and identified those very

19     people, and I'm sure that the Government benefitted

20     from that cooperation.  He made a full statement to

21     the authorities and was only when he concluded that

22     his family's life would be placed in harm's way if

23     he testified at any trial against those people that

24     he identified and gave names to that he decided not

25     to go forward with the cooperation, that's why it

1  certainly cannot be enforced in any manner, but the
2  Court should know that there was some very good
3  cooperation prior to that.
4        THE COURT:  All right.  Government comment
5  on sentencing.
6        MR. MURPHY:  Normally, Judge, I would not
7  belabor the situation that we have here today
8  because the Court's hands are pretty much tied.
9  This isn't a situation where we have advisory
10 guidelines and the Court has discretion.  This is a
11 situation where the defendant in part because of his
12 prior record but also in part because of the vast
13 amount of drugs involved here that he faces a
14 mandatory life sentence here today.  And everyone I
15 think in this courtroom understands that that is the
16 sentence that the Court must impose.
17       But I want to say a couple of things, maybe
18 three different things:
19       First, this conviction represents the
20 defendant's ninth felony drug conviction.  He has
21 eight prior felony drug convictions.  I shouldn't
22 think that even the defendant would expect much
23 leniency coming into this Court or any Court with
24 that kind of a record.
25       So with that kind of a record, let's take a

look at what the facts are.  He's surveilled.  He
has 48.1 grams of crack cocaine on his person along
with $246 in U.S. currency.  They do a search
warrant at his house.  They found 326.3 more grams
of freshly cooked crack cocaine.  In addition to
another kilo that he hasn't gotten to yet to cook
and/or sell, they find a fully loaded 15 round
Berretta 9mm semiautomatic handgun.  They find the
scale and the other trappings of the other
trafficking and a total of $33,190 in cash.

He does tell the police that he bought those
drugs at the -- actually tells the police he bought
a kilo and a half up in Chicago for $40,000.  That
makes him a significant dealer here in Peoria with
eight prior convictions.  What can this man expect?

I want to respond to this cooperation matter
because I will represent to this Court that as an
Officer of this Court, I have done everything that I
think I can ethically to try to cajole, to try get
this man to cooperate.  And it is his choice to go
to prison today looking at mandatory life, the rest
of his life in prison without release even despite
what I consider to be my best efforts to help him
see that he can help himself.

Yes, he did talk to the police after his

1  arrest, but, no, we have not enjoyed the use of any

2  of that information.  Although he identifies

3  individuals, he refuses at this point to back it up.

4  We can make no case without that.  And have not been

5  able, Judge, to place any value whatsoever, if I had

6  the authority here today because he had cooperated,

7  I would be happy to make some kind of a motion for

8  him, Judge, so that you could exercise some

9  discretion and give him some hope of ever being out

10  again.  I can't do that because the defendant has

11  made the choices that he has made.

12          Thank you, Judge.

13          THE COURT:  Thank you, Mr. Murphy.

14          Comment on sentencing, Mr. Cowan.

15          MR. COWAN:  Yes, Your Honor.

16           Your Honor, the eight felony convictions

17  were nothing like what my client stands convicted of

18  here.  They were minor amounts.  Some of them .1

19  gram.

20          And he did try to cooperate, but then

21  circumstances placed him in a situation where he

22  felt that he might cause the death of or great harm

23  to members of his family.

24           Your Honor, I would just like to comment, I

25  think it's a sad -- as a practicing attorney for 36

1  years, I think it's a sad state of affairs when
2  people that commit murder are given lesser sentences
3  than my client facing here today.  I believe that
4  one day there will come a time that appropriate
5  sentencing for offenses such as my client committed
6  and stands convicted of will be more appropriate
7  than they are now.  I believe that it's unfortunate
8  that possession and sale of a substance can cause an
9  individual to be in a circumstance where he faces
10 life in prison.  I do believe he -- if it's
11 possible, that the Court can give him some leniency
12 for the cooperation that he did give.  We'd ask for
13 that, whatever leniency the Court can give him for
14 that.
15          But, as I say, Your Honor, he is in a
16 situation where he is.  It is what it is.  Given
17 what the law is, given what the atmosphere of the
18 political scene is at this time, but, as I say, Your
19 Honor, I think there will come a time when there
20 will be more appropriate sentences for people
21 selling substances.  I say that not just as a
22 lawyer, members of my own personal family have been
23 destroyed by drugs.  It's a nightmare.  And I know
24 that individuals that put drugs on the street create
25 that nightmare.  However, still, as I said, I

presided over many individuals charged with murder

that it doesn't seem to balance in my mind, just as

an individual that has practiced law for 36 years,

looked into the eye of evil and seen people get out

after 14 years after they have killed an individual.

Things seem askew.  We are not making any type of a

cop-out here as far as what we are saying and what

my client has asked me to say.  I just think that

things are askew.  He is making no bones about what

he did and he stands convicted.  I just feel that it

is draconian -- the laws at this time are draconian.

They are not efficient.  And I ask the Court to take

all of that in consideration and apply what leniency

it can to my client.  Thank you, very much.

MR. MURPHY:  Thank you.

Before imposing sentence, Mr. Burnside, you

have a right to make a statement on your own behalf.

If so, sir, could you use the lectern.

THE DEFENDANT:  First of all, Your Honor I

would like to apologize to God, to the Court,

society, and most assuredly to my family and

friends.  In life it is always easier to blame

others than it is to accept responsibility, but

today I accept responsibility for why we are here.

And I sincerely apologize to each and every one of

ya' all, especially my mom.  Mom, mom, you are by
far the best mom in the world.  You taught me to be
a positive productive responsible man.  And I am
sincerely sorry that I have failed you, yet again
you continue to show me unconditional love in spite
of my shortcomings, and I thank God each and every
day for you because you are truly a heaven sent
angel with expandable powers and strength and again
I apologize for putting you through this.  However,
mom, this battle ain't ours; it's God's.  You and I
together we will shout with joy when God wins its
battle.  This is only the beginning; not the end,
and your baby boy will be home real soon because
when God is for you, who can be against you?  Don't
worry, mom, trust me.

       To my friends and family, to my brother,
love you, bro.  To Mieka, I love you.  Thanks for
coming.

       Your Honor, I have made mistake after
mistake in my lifetime but if you review the facts,
each and every conviction, each and every arrest was
due to my drug addiction and petty offenses.  Not
one of them are class X or nothing close to a very
serious drug conviction.  I, for the first time in
my life was living okay, but, Your Honor, I wasn't

1 selling drugs to, you know, to be on top of the
2 world.  I sold drugs so that I could eat.  But also,
3 Your Honor, so that I could provide a program for
4 children in my community.
5       I don't know if you read the letter that I
6 wrote you, Your Honor, but I don't even own a car.
7 And if I wanted to, if the drug dealing was just
8 about me, I could have rode in a drop top Bentley.
9 However, I was trying to establish a safe haven
10 place in my community so that they wouldn't have to
11 sell drugs and go through the things that I had to
12 go through.  And I got caught.
13       I accept responsibility for my mistakes, and
14 I think that it was all God's plan for me to get
15 caught because, see, today I'm not the guy that I
16 was on 9/11, the day that I was arrested.  I got God
17 in my life today.  And no matter what this Court do
18 to me, I'm going to shout and praise God anyhow.
19 And I'm going to stand on God's glory for the rest
20 of my life.  But, Your Honor, I will say that you
21 heard the evidence in my case, and I was wronged
22 some, but I take responsibility for it all anyhow.
23       With that, I just want to say that I pray
24 that you will have grace and mercy; that I am 41
25 years old; I am a grandfather.  I am not young

1 anymore, and I can assure you that if there is any

2 way possible for you to find it within your heart to

3 have grace and mercy on me, I won't ever, ever make

4 you regret it.

5        With that, I want to say to my mom and

6 friends, I love you all.

7        THE COURT:  Thank you, Mr. Burnside.

8        First let me say that I don't think anyone

9 deserves life imprisonment for selling drugs.  So

10 far I have not found a situation where I felt a

11 person needed life imprisonment to satisfy the

12 purposes of sentencing.  But, unfortunately, my

13 personal feelings don't count because the law says

14 that if you have two or more felony drug convictions

15 and you are convicted of selling crack cocaine more

16 than 50 grams, you got to get life imprisonment.

17 That's what the law says.  And as a judge, I'm

18 required to follow the law.  So while my personal

19 view may be that I wish that I could impose a

20 sentence less than life, I have no choice in the

21 matter.  So I must impose a sentence of life.

22        But let me say this, believe it or not, I

23 have not met a Government attorney who relished the

24 idea of sending someone away for life for selling

25 drugs.  Mr. Murphy doesn't relish that.  That's the

1  reason he spoke to me and said, let me tell you,

2  Judge, even though you don't have a choice here, I

3  want to explain to you that I have tried everything

4  that I can to get a situation where you don't have

5  to sentence the defendant to life.  And we lawyers

6  know that the only possible way that can happen

7  would be if Mr. Burnside had cooperated with the

8  Government to the extent that the Government made a

9  motion asking me to sentence him below the mandatory

10  minimum.  And if that motion was made I could then

11  sentence the defendant to something less than life,

12  a sentence which I found to be most or more

13  appropriate.

14       Mr. Murphy and defense counsel both said

15  that at some point Mr. Burnside cut off his

16  cooperation and did not and was not willing to

17  follow through in a way that will allow the

18  Government to make the motion.  They both said it

19  was because Mr. Burnside feared that there would be

20  some harm either to himself or to his family.  That

21  may be true.  So he had to make a decision.  Do I do

22  something that will allow the Court to sentence me

23  to less than life or do I do something that would

24  put myself or my family in some type of physical

25  harm?  He chose the latter.  I don't criticize his

choice because that's the choice he made.  But by
making that choice, he took it out of my hands to do
anything but sentence him according to law to life
imprisonment.  By making that choice, he gave the
U.S. Attorney no opportunity to make a motion asking
me to sentence him below the mandatory minimum.

I'm explaining this, something that I don't
ordinarily do, because there have been letters
written on behalf of the defendant by his mother,
his fiancee, his children and by him and they give
me a side of Mr. Burnside, if true, which is not
found in the Presentence Report.  His letter sort of
repeated what he told me in court; that he has been
active in the community to help other young men from
going down the path that he took.  I don't know if
that is true or not, but assuming it's true, all
that says to me is that there is a side to
Mr. Burnside which is not all bad just as there is a
side to him which is not all good.  But for whatever
reason he made choices.  And what isn't said or
admitted by him is the fact that every ounce of
crack cocaine that he sold and distributed helped
ruin someone's life.  There was an awful lot of
misery that he brought to other people in this
community.  And whether or not the good he did,

assuming it's true, in keeping other young men from
going into a life of crime, whether that good
off-set the evil, I am prepared to judge. I don't
think it did. Rarely do you see good coming out of
doing harm.

But be that as it may, if it were within my
power, I would not be sentencing Mr. Burnside to
life imprisonment without release. He deserves a
substantial sentence, but I think that is too long.
And as defense counsel points out, the drug laws are
somewhat disproportionate when you look at the
penalty given to people who murder or rape or do
other serious crimes. But defense counsel and
everybody else knows that's not my call because I
don't make the law. As a judge I enforce the law.
I administer the law. So I don't take
responsibility for this disproportionate sentencing
of someone who deals drugs, crack cocaine, and
someone who kills somebody.

Also, it's my judgement Mr. Burnside is not
a stupid man. He is an intelligent person. And I
sincerely don't understand why he would deal crack
cocaine if he were going to deal drugs, why crack
cocaine? It's been about 21 years now since we had
this law that makes crack cocaine punishment more

severe than virtually everything.  We have had
thousands of cases where young men have been
sentenced; mandatory minimum 10, 20, 30, life.  This
is not the first case I had to sentence someone to
life.  Anyone out there who doesn't know that if
you're going to deal drugs, don't deal crack
cocaine.  When is that lesson going to get around?

Now, one shouldn't deal drugs, that's the
easy way.  One should do it the hard way that most
people do.  And I don't just mean people who are
well off or middle class.  I mean people start out
with nothing but with hard working luck, some good
things happen to them.  That's happened to most of
us.  It happened to me.  It happened to Mr. Murphy.
Almost everybody.  We chose to do it the hard way
and the right way and things worked out.  And I
realize a lot of people for some reason didn't have
that faith, and that belief that if they did it
right, things would work out.

And I hope that the election of Mr. Obama,
Senator Obama cause people to rethink that notion
that would not be more committed to doing the right
thing with some hope that things would turn out all
right.  And I don't mean to lecture and I will stop
now.  But I just wanted to point out that the law is

1  the law, and we can't pick and choose how we are
2  going to apply the law, and if anyone were to
3  deserve life imprisonment for selling drugs, Mr.
4  Burnside would be at the top of the list or among
5  the top of the list in terms of what he's done.  But
6  again I think that's a bad law.  And I wish there
7  were some way that Mr. Burnside could see himself
8  clear to do what he has to do if it's still open to
9  get the Government's involvement because without it,
10 he has a life imprisonment but that's his choice.
11      But I do want to say one last thing, and
12 this is to your mother, Mrs. Burnside, from what I
13 understand you're a good woman who has tried to
14 bring your boys up differently.  I'm sorry, they let
15 you down.
16      Pursuant to the Sentencing Reform Act of
17 1984 and in consideration of the statute requiring a
18 mandatory sentence of life imprisonment in this
19 case, the defendant Brian L. Burnside is hereby
20 committed to the custody of the Bureau of Prisons
21 for a period of life.
22      The Court finds that the defendant does not
23 have the ability to pay a fine.  So no fine is
24 imposed.  Any income he earns while incarcerated
25 should go toward the support of his family.  If the

defendant is ever released from custody, he must

serve a ten-year term of supervised release.  Within

72 hours of his release he must report in person to

the Probation Office in the district to which he is

released.

        While on supervised release, the defendant

cannot commit another federal, state or local crime,

nor possess a controlled substance.

        He must submit to one drug test within 15

days of release from imprisonment and two drug tests

thereafter as directed by the Probation Officer.

        Pursuant to law, he must cooperate in the

collection of DNA as directed by the Probation

Officer or the Bureau of Prisons.

        In addition to the standard conditions of

supervised release recommended by the United States

Sentencing Commission, the Court will impose the

following special conditions.  One, the defendant

must refrain from excessive use of alcohol and he

cannot purchase, possess, use, distribute or

administer any controlled substance or any

paraphernalia related to any controlled substance

except as prescribed by a physician.

        At the direction of the Probation Officer,

he must participate in a program for substance abuse

1 treatment including not more than six tests per
2 month to determine whether he's used controlled
3 substances.  The defendant must pay for these
4 services as directed by the Probation Officer.
5       And lastly, he cannot own, purchase or
6 possess a firearm, ammunition or other dangerous
7 weapons.
8       According to law, a special assessment of
9 $100 is imposed payable immediately.
10       The Court will recommend to the Bureau of
11 Prisons that the defendant serve his sentence in a
12 facility as close to his family in Peoria, Illinois
13 as possible, and one that will allow him to
14 participate in the Residential Drug Abuse Program
15 and maximize his exposure to educational and
16 vocational opportunities.
17       The Court would advise the defendant of his
18 right to appeal this sentence.  And the Court notes
19 that when the defendant entered his plea of guilty,
20 he also reserved the right to appeal the Court's
21 ruling on his motion to suppress certain evidence
22 and his motion for a Franks hearing, which you might
23 say would be another option the defendant will have
24 available in the event the Court was wrong in my
25 decision then that could effect his status.

1       You have a right to appeal this sentence by

2  filing a written notice of appeal within ten today's

3  of entry of judgment which will be today.  Your

4  attorney can prepare and file a notice of appeal for

5  you as part of his obligation.  If for some reason

6  he fails or refuses to do so and you wish to appeal,

7  all you have to do is contact the clerk of the court

8  and indicate you wish to appeal and the clerk will

9  prepare and file a notice of appeal for you.  If you

10  could not pay the cost of an appeal you can ask for

11  leave to appeal without payment of cost, and if you

12  are found to be eligible, costs can be waived.

13       The defendant is remanded to the custody of

14  the marshal to await execution of sentence.

15       And the hearing is adjourned.

16       MR. COWAN:  Your Honor, may I approach?

17       THE COURT:  Yes, counsel.

18       MR. COWAN:  I spoke to the appellate court

19  and they explained to me that -- I will give you a

20  copy.  I have a motion seeking informa pauperis

21  status.  They said that you can hear that motion.

22       Do you want me to hand it to you?

23       I have attachments, an affidavit filled out

24  by my client and I would cite paragraph 114 showing

25  that he is in fact bankrupt.  His commissary shows

1  that he has no money left and an affidavit filled

2  out that he has absolutely zero.  These attachments

3  are necessary according to the court.

4       As I said, I cite paragraph 114 of the

5  presentence showing that he is in fact bankrupt and

6  indigent.

7       I have also prepared an order, Your Honor,

8  if -- it was explained to me in the new rules that

9  have been modified this kind of streamlines ordering

10 of transcripts --

11      THE COURT:  Mr. Burnside, I received what

12 purports to be an affidavit in support of informa

13 pauperis status and it bears your signature.

14      Did you sign this form, sir?

15      THE DEFENDANT:  Yes, sir.

16      THE COURT:  And is this information set

17 forth in the form true?

18      THE DEFENDANT:  Yes, sir.

19      THE COURT:  Does anyone owe you any money?

20      THE DEFENDANT:  No, sir.

21      THE COURT:  Is anyone holding any money, of

22 anything of value for you?

23      THE DEFENDANT:  No, sir.

24      THE COURT:  Based on the -- well, first of

25 all, raise your right hand.  Do you swear that the

 1  information set forth in the affidavit and answers

 2  you have given to the Court here are true?

 3          THE DEFENDANT:  I do.

 4          THE COURT:  All right.  Based on the

 5  affidavit and the statements of the defendant, the

 6  Court finds that he is eligible for informa pauperis

 7  status and the Court will grant the motion which

 8  means that you will be able to appeal IFP.

 9          MR. COWAN:  Your Honor, I prepared a notice

10  of appeal, I can hand to the Court.

11          THE COURT:  You can just file that with the

12  clerk.

13          MR. COWAN:  Thank you.  I have given a copy

14  to Mr. Murphy.  Thank you, Your Honor.

15          **(Which were all of the proceedings held on**

16             **this day.)**

17                        *****

18      I certify that the foregoing is a correct

19  transcript from the record of proceedings in the

20  above-entitled matter.

21

22

23  s/Nancy Mersot           Date:  April 27, 2009

24  Court Reporter

25