CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

---

No. 08-4135

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN L. BURNSIDE,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:07-cr-10110—**Joe Billy McDade**, *Judge.*

---

ARGUED SEPTEMBER 25, 2009—DECIDED DECEMBER 4, 2009

---

Before EASTERBROOK, *Chief Judge*, and KANNE and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge*.  While on parole for a cocaine distribution conviction and following months of police investigation, defendant Brian Burnside was arrested for possession of a controlled substance. In a search incident to his arrest, police found large amounts of crack cocaine on Burnside's person. Police then searched Burnside's residence where they recovered more crack

cocaine, cocaine, a handgun, and more than $30,000 in cash. A federal grand jury charged Burnside in a one-count indictment with possession of more than fifty grams of crack cocaine with the intent to distribute. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A). Burnside filed a motion to suppress evidence, arguing that the officers lacked probable cause for his arrest. He also argued that his unlawful arrest tainted both the evidence found incident to that arrest and the search warrant later obtained. The district court denied the motion. Burnside eventually pled guilty to the charge and was later sentenced. Burnside argues on appeal that the district court errone-ously denied the motion to suppress. He also seeks to withdraw his guilty plea, arguing that the district court judge inappropriately participated in the plea colloquy. We find no merit to Burnside's claims, and we affirm.

## I. BACKGROUND

Brian Burnside was a crack cocaine dealer. In July 2007, Peoria Police Officer Chad Batterham received information from two confidential informants pertaining to Burnside's drug activities. Both informants identified Burnside as a high-volume crack cocaine dealer. The first informant said that Burnside was a cocaine dealer in the Peoria area and that he was selling several kilograms of cocaine per month. The informant also provided a detailed description of Burnside's residence. The second informant knew Burnside by his street-name, Shorty Bank Roll. Because

No. 08-4135                                                    3

of Officer Batterham's personal knowledge and his police experience in Peoria, as well as a detailed physical description provided by the informant, he was confident Shorty Bank Roll was in fact Burnside. To further refine his identification, Officer Batterham asked the informant to select a photograph from a photo array of six men with similar characteristics. The informant chose the photograph of Burnside and identified him as Shorty Bank Roll.

Officer Batterham located the residence described by the two informants. He performed a check on the white Cadillac parked in the driveway. The car was registered to Terry Burnside, Brian Burnside's brother. In a records check on the residence, Officer Batterham discovered a police report of a prior burglary in which Terry Burnside stated that the house belonged to his brother, Brian. Finally, Officer Batterham ran a criminal history check on Burnside, which revealed that Burnside was currently on parole from a Minnesota conviction for distributing cocaine, and that he had five prior felony drug convictions.

In September, 2007, the Peoria Police Department's Vice and Narcotics Unit initiated surveillance of Burnside. Officers observed and followed Burnside as he left his home. Sergeant Bainter and Officer Miller conducted their observation from two separate unmarked police vehicles. Both officers saw a woman, DeEva Hallam, approach Burnside's vehicle, lean in for approximately thirty to forty seconds, and leave carrying a brown plastic grocery bag.

After Hallam left Burnside's vehicle, Officer Miller and Officer Manion[1] saw Hallam throw the bag in a nearby dumpster. Officer Miller then stopped Hallam and recovered the bag. Hallam explained that she received the bag from a friend who asked her to throw it away. Officer Miller smelled a cocaine hydrochloride odor on the bag, which also contained a kilogram wrapper, purple rubber gloves, wet paper towels, and soda cans.[2] Additionally, he discovered a rock of cocaine clutched in Hallam's hand.

Officer Miller informed Officer Batterham of these developments, who, in turn, alerted the team of officers following Burnside. When Officers Allenbaugh and Armentrout observed Burnside fail to signal a turn, they activated the lights on their police vehicle and attempted to pull Burnside over; however, Burnside began driving erratically, slowing down and then speeding up. It also appeared to the officers that Burnside was trying to call somebody on his cell phone. Eventually, the officers boxed in Burnside, who appeared to attempt to get out of the vehicle while it was still moving.

Believing Burnside was going to flee, officers pulled Burnside out of the car, forced him to the ground, and placed him in handcuffs. Burnside was arrested for possession of a controlled substance and for driving

---

[1] Officer Manion arrived shortly after the transaction between Burnside and Hallam took place.

[2] The government's brief also states that inside the brown grocery bag was a plastic bag containing numerous plastic tear-offs.

without a valid Illinois driver's license. While searching Burnside, Officer Allenbaugh observed an unusual "bulge" in Burnside's pants, which Burnside claimed was a hernia. Allenbaugh removed the object and found a large plastic bag containing several individual bags of crack cocaine.

Fearing Burnside had by cell phone instructed somebody at his residence to destroy any further evidence, officers returned to the house. After conducting a protective sweep during which no one was found, the officers sought and received a search warrant from a magistrate judge. The officers relied on all of the evidence received up to and through the arrest of Burnside as probable cause justification for the warrant.

Subsequently, the officers searched the house, seizing one half of a kilogram of crack cocaine, one full kilogram of cocaine, a handgun, and more than $30,000 in cash.

Burnside now argues that neither of the officers had a vantage point from which they could determine if Hallam had been carrying the bag prior to approaching Burnside's vehicle. Burnside further asserts that both he and Hallam told police that she had been carrying two cartons of cigarettes prior to approaching the vehicle, and that the two cartons were later found in Burnside's vehicle.

Burnside also argues that the police did not have probable cause to conduct a *Terry* stop and frisk, or, in the alternative, that they exceeded the permissible limits of the *Terry* stop by manipulating and removing the bulge in his pants.

Finally, Burnside argues that because officers lacked probable cause to conduct the *Terry* stop and frisk, any evidence found in the search of the residence thereafter was "fruit of the poisonous tree." He also argues that the officers' failure to include the protective search in the warrant application prohibits them from relying on the "good faith" exception to the exclusionary rule.

## II. ANALYSIS

Burnside raises two issues on appeal. First, he argues that the district court erred when it denied his motion to suppress. Second, he argues that the district court's participation in the plea colloquy constitutes plain error. We discuss each argument in turn.

### A. The Motion to Suppress

When reviewing the district court's denial of a motion to suppress, we review factual findings for clear error and legal questions *de novo. United States v. Mosby*, 541 F.3d 764, 767 (7th Cir. 2008) (*citing United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008); *United States v. McIntire*, 516 F.3d 576, 578-79 (7th Cir. 2008)). Mixed questions of law and fact are reviewed *de novo. United States v. Fiasche*, 520 F.3d 694, 697 (7th Cir. 2008). We accord special deference to the district court's credibility determinations because the resolution of a motion to suppress is almost always a fact-specific inquiry, and it is the district court which heard the testimony and observed the witnesses at the suppression hearing. *United*

*States v. Hendrix*, 509 F.3d 362, 373 (7th Cir. 2007). A factual finding is clearly erroneous only if, after considering all the evidence, we cannot avoid or ignore a "definite and firm conviction that a mistake has been made." *United States v. Marshall*, 157 F.3d 477, 480-81 (7th Cir. 1998) (internal quotation marks omitted). We find no credible reason here to disturb the district court's denial of the motion to suppress. We arrive at that determination after considering two substantive issues: (1) whether officers had probable cause to arrest Burnside, and properly searched Burnside incident to that arrest; and (2) whether officers had sufficient probable cause for the search warrant.

### 1.  The Arrest and Search

The district court found that the officers had probable cause to arrest Burnside for possession of a controlled substance. Accordingly, it follows, and the court held, that the subsequent seizure of crack cocaine from Burnside's pants was lawful.

Burnside argues (weakly, we think, given the facts of this case) that the officers lacked probable cause to arrest him. Burnside concedes, as he must, that the police had reasonable suspicion to conduct a *Terry* stop due to his failure to signal when turning and because they believed he was driving with an invalid driver's license. *See Terry v. Ohio*, 392 U.S. 1 (1968). But Burnside claims that any evidence collected by the police *prior* to the stop was insufficient to arrest him for possession of a controlled substance. He also argues that because he was

unlawfully arrested, the evidence gathered from him during the pat-down subsequent to his arrest must be suppressed.

"The Fourth Amendment prohibits unreasonable searches or seizures, and courts exclude evidence obtained through an unreasonable search or seizure." *Mosby*, 541 F.3d at 767. *But see Guzman v. City of Chicago,* 565 F.3d 393, 398 (7th Cir. 2009) (noting that "[e]xclusion is not a necessary consequence of a Fourth Amendment violation, and the benefits of exclusion must outweigh the costs." (*citing Herring v. United States*, 129 S.Ct. 695, 700 (2009))). However, police may arrest an individual if they have probable cause to believe that the individual engaged in criminal conduct, *Mosby*, 541 F.3d at 767, as an arrest supported by probable cause is reasonable by its very nature, *see Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). When police conduct a warrantless search, the court of appeals makes an independent determination as to whether the search was supported by probable cause or reasonable suspicion. *McIntire*, 516 F.3d at 577 (*citing Ornelas v. United States*, 517 U.S. 690, 697 (1996)). The officers' subjective motivations are irrelevant as long as they have probable cause to justify the search and seizure. *See Whren v. United States*, 517 U.S. 806, 812-13 (1996).

"[D]etermining whether probable cause exists involves a 'practical, common-sense decision whether, given all

the circumstances set forth . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Ellis*, 499 F.3d 686, 689 (7th Cir. 2007) (*quoting United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006) (alterations in original)). "'Probable cause is a fluid concept based on common-sense interpretations of reasonable police officers as to the totality of the circumstances' known at the time the event occurred." *Id.* at 689 (*quoting United States v. Breit*, 429 F.3d 725, 728 (7th Cir. 2005)). The events leading up to an arrest are viewed from the standpoint of an objectively reasonable police officer. *Ornelas*, 517 U.S. at 696.

We think the police officers in this case were armed with more than a sufficient amount of information at the time of Burnside's arrest to constitute probable cause. First, the officers were aware of Burnside's five prior felony convictions for the manufacture or delivery of a controlled substance. Second, the officers knew that Burnside was currently on parole from Minnesota for a drug-related offense. Third, Officer Batterham received reliable information from two different informants who claimed that Burnside was a large-scale drug dealer; furthermore, the information supplied by one of the informants buttressed and was consistent with Officer Batterham's knowledge of Burnside's alias, Shorty Bank Roll. Fourth, officers observed Burnside participating in conduct consistent with drug trafficking. Fifth, after Burnside failed to use a turn signal and officers initiated the traffic stop, Burnside drove erratically, made a hurried call on his cell phone, and appeared to make a flight attempt.

Burnside argues that the officers did not have a clear vantage point from which to witness the alleged drug transaction between Burnside and Hallam; therefore, he argues that the officers could not conclusively determine whether Hallam approached Burnside's vehicle with the brown grocery bag in her hands. Burnside asserts that he did not give Hallam the bag, nor the rock of crack cocaine later found in her fist, when she leaned into his vehicle.

Burnside's arguments miss the mark. As the district court noted, the officers did not need to prove an actual drug transaction took place. For an arrest, officers only need to believe objectively that the conduct observed was consistent with drug trafficking. *See United States v. Brown,* 366 F.3d 456, 458 (7th Cir. 2004). The officers, employing even a modicum of common sense, had probable cause to conclude that something illegal occurred. Moreover, Officers Bainter and Miller were specially trained in narcotics enforcement techniques. In forming a reasonable belief that a drug transaction occurred, they were permitted to view the events through the prism of their training and experience. *United States v. Funches,* 327 F.3d 582, 586 (7th Cir. 2003). Even without the suspicious Hallam transaction, the police had sufficient probable cause to arrest Burnside.

Burnside further argues that, even if officers had reasonable suspicion to perform a *Terry* stop, they impermissibly exceeded those limits when subsequently searching him. We need not address this argument, however, because the officers had probable cause to arrest Burnside. It follows, *a fortiori,* that the officers' seizure of crack cocaine from Burnside incident to his

arrest was lawful. *See United States v. Tejada*, 524 F.3d 809, 811 (7th Cir. 2008) (*citing Chimel v. California*, 395 U.S. 752, 763 (1969)).

Based on the totality of the circumstances the police had an objectively reasonable basis to believe a crime had been or was being committed. There was sufficient probable case to arrest Burnside and to perform the search incident to that arrest.

### 2. *The Search Warrant*

Burnside makes two arguments regarding the validity of the search warrant. First, he argues that because the officers used information recovered from his arrest in the warrant application, the warrant was tainted by such information. Therefore, he asserts, any evidence later discovered in his home was fruit of the poisonous tree. Second, assuming he is correct, Burnside argues that the police cannot rely on the good faith exception to the exclusionary rule because the police failed to notify the judge of the protective sweep performed prior to applying for the warrant.

When we review a district judge's decision as to whether a previously issued warrant was supported by probable cause, our review is *de novo*. *See McIntire*, 516 F.3d at 578. However, we give "great deference" to the issuing judge's determination of the existence of probable cause. *Id.*; *cf. id.* at 577 ("A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'") (*quoting Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

We will affirm a court's finding of probable cause unless the supporting affidavit, in light of the totality of the circumstances, "fails to allege specific facts and circumstances that reasonably lead to the belief that the items sought in the search warrant are likely to be located in the place to be searched." *United States v. Hobbs*, 509 F.3d 353, 361 (7th Cir. 2007) (*citing Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Wiley*, 475 F.3d 908, 914-15 (7th Cir. 2007)). In determining whether probable cause exists, officers may draw reasonable inferences about the likely storage location of evidence; these inferences are based upon the type of offense and the nature of the likely evidence. *Id*. (*citing Ellis*, 499 F.3d at 690). With regard to drug dealers, evidence is likely to be found at the dealers' residence. *Id*. (*citing Ellis*, 499 F.3d at 691).

Burnside cannot advance his subsequent search warrant arguments, however, because the failure of his unlawful arrest premise precludes any further examination. Because we find that the police had probable cause to arrest Burnside, the officers were permitted to include in the warrant application the evidence they discovered during the search incident to his arrest. Considering the range of evidence, the police provided sufficient probable cause, both from their investigation and from the search incident to Burnside's arrest, for the magistrate judge to issue a valid warrant to search Burnside's home. Such finding renders the protective sweep and attendant good faith argument moot because it was never used by police as justification for the warrant.

We hold that the issuing state court judge had a substantial and legally sufficient basis for concluding that probable cause existed to issue the warrant, and that the district court's denial of the motion to suppress evidence recovered from the search was proper.

### B. The Plea Colloquy

Finally, Burnside argues that the district court participated in plea negotiations during the change-of-plea hearing in violation of Federal Rule of Criminal Procedure 11(c)(1). Thus, he asserts his guilty plea is tainted, and moves to withdraw it. We disagree.

Because Burnside did not seek to withdraw his guilty plea prior to reaching this court, we review Burnside's claim of a Rule 11 violation for plain error. *United States v. Vonn*, 535 U.S. 55, 59 (2002). To vacate such a plea under the plain error standard, we must find that (1) an error has occurred; (2) it was "plain"; (3) it affected a substantial right of the defendant; and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997).

"Rule 11(c)(1) categorically prohibits the court from participating in plea negotiations between the government and the defendant's attorney."[3] *United States v.*

---

[3] Federal Rule of Criminal Procedure 11(c)(1) states: "In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss

(continued...)

*Linder,* 530 F.3d 556, 562 (7th Cir. 2008); *see also United States v. Kraus,* 137 F.3d 447, 452 (7th Cir. 1998). "Excluding the judge from the plea discussions serves three purposes: it minimizes the risk that the defendant will be judicially coerced into pleading guilty, it preserves the impartiality of the court, and it avoids any appearance of impropriety." *Kraus,* 137 F.3d at 452; *see In re United States,* 572 F.3d 301, 312 (7th Cir. 2009) (*citing United States v. O'Neill,* 437 F.3d 654, 660 (7th Cir. 2006) (Posner, J., concurring) (commenting that judges in our adversarial system do not double as prosecutors)). The judge who advocates for a particular plea bargain may resent the government or the defendant for disagreeing. *See In re United States,* 572 F.3d at 311.

But not all judicial observations expressed with respect to plea agreements violate the rule. In fact, the district judge should often take an active role. *Linder,* 530 F.3d at 562. For example, "once the parties have themselves negotiated a plea agreement and presented that agreement to the court for approval, it is not only permitted but expected that the court will take an active role in evaluating the agreement." *Kraus,* 137 F.3d at 452; *see* Fed. R. Crim. P. 11(e)(1) advisory committee note (1974 amend.) ("It is contemplated that the judge may participate in such discussions as may occur when the plea agreement is disclosed in open court."). This holds true even if the agreement is informal and not binding.

---

[3] (...continued)
and reach a plea agreement. The court must not participate in these discussions."

No. 08-4135                                    15

*See United States v. Carver*, 160 F.3d 1266, 1269 (10th Cir. 1998).

The district court did not violate Rule 11(c)(1) because there was no plea negotiation or agreement between Burnside and the government. It is impossible for the district court to have participated in plea negotiations that never happened. The district court judge said, "I think the record is clear that there is no cooperation agreement between the defendant and the government and according to the government [there] never has been one and so that's as the situation stands." (Tr. at 27.)[4]

The record further reveals that the government denied Burnside any hope for leniency by declining to file a substantial assistance motion,[5] noting that Burnside repeatedly refused to cooperate. Similarly, the judge made it abundantly clear that the court could not force the government to negotiate with Burnside over the question of whether the government might file a motion for substantial assistance on his behalf.[6] The

---

[4] "Tr." refers to the transcript of the change of plea hearing.

[5] 18 U.S.C. § 3553(e) gives the government discretion to make a recommendation to the district court judge to sentence a defendant below the sentencing guidelines mandatory minimum due to the defendant's cooperation and substantial assistance.

[6] Section 3553(e) provides: "*Upon motion of the Government*, the court shall have the authority to impose a sentence below a level

(continued...)

government stated in open court that it was prepared and willing to go to trial and would not make such a motion.

   Although Burnside expressed his desire for the government to file a substantial assistance motion, he also acknowledged that the government did not at any time induce him to plead guilty in order to receive it. Burnside, with five prior felony drug convictions, is no stranger to criminal proceedings; nevertheless, he may have believed that, by offering up his guilty plea, the government might feel obligated to reciprocate with a substantial assistance motion. Such an unsubstantiated belief does not constitute the existence of a plea negotiation or agreement. Moreover, given the incontrovertible fact that a plea agreement with the government did not exist, the district court provided Burnside with a recess during which he could reconsider his plea with his family and his lawyer. We do not see any evidence in the record that the district court inappropriately participated in a plea negotiation in violation of Rule 11.

   But Burnside also argues that Rule 11(c)(1) can be violated when there is in fact no plea agreement,[7] and he

---

[6]  (...continued)
established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." (emphasis added).

[7]  *United States v. Baker*, 489 F.3d 366, 371 n.3, upon which Burnside heavily relies, does not help him. First, *Baker* does not control the holding of this court. Second, Burnside quotes
                                           (continued...)

No. 08-4135                                                    17

urges us to find that a Rule 11 violation occurs whenever a judge participates in a plea discussion. Specifically, he argues that the district court violated Rule 11(c)(1)—regardless of the court's motives and intentions—because the district court judge addressed Burnside and his counsel regarding the consequences of his plea prior to Burnside entering a plea of guilty.

---

[7] (...continued)
*Baker* in the hopes that we will read his quotation standing alone. Footnote 3, however, specifically references the court's use of *United States v. Harris*, 635 F.2d 526, 528 (6th Cir. 1980), quoting, "'[T]he judge should not participate in the *plea bargaining process*.'" (emphasis added). Notably, Burnside also fails to quote the remainder of footnote 3, which states, "Rule 11(c)(1) does not merely guard against judicial participation in plea discussions when they result in a bargain; it also prohibits participation that effectively undermines the parties reaching a bargain (or a better bargain)." As the quotation from *Harris* and the footnote suggest, *Baker* is easily distinguishable. In that case, the government and Baker had been attempting to come to a common ground with respect to the plea agreement. The district court unilaterally weighed in the day before trial to encourage the parties to come to a plea agreement. In doing so, the judge provided comparisons of a prior case with a similar fact pattern to indicate how he might be able to provide Baker a more attractive sentence if he pled guilty. Further, the parties and the court discussed the status of the plea negotiation and what the government had offered Baker. Not surprisingly, the D.C. Circuit held that the judge impermissibly and prejudicially participated in *plea negotiations*. In contrast, the district court in this case conducted itself as if the parties had no plea agreement—which they did not—and there was no plea bargaining process.

But Rule 11(c)(1) cannot be read in a vacuum. A principal purpose of Rule 11(c) is to prescribe the responsibility of the court to ensure that a defendant who pleads guilty has made an informed plea. Fed. R. Crim. P. 11 advisory committee note (1974 amend.). Indeed, the district court judge has *a duty* to make such inquiries under Rule 11(c)(1) and other provisions of Rule 11. *United States v. Frank*, 36 F.3d 898, 901-02 (9th Cir. 1994); *see also* Fed. R. Crim. P. 11(b), (c). For example, the judge must "address the defendant personally" before accepting a guilty plea to ascertain the defendant's understanding of the charges and penalties and to ensure that the plea is voluntary. Fed. R. Crim. P. 11(b), (c); *see McCarthy v. United States*, 394 U.S. 459, 465-66 (1969). And, before the court enters judgment on a guilty plea, the judge must inquire and be fully satisfied that there is a factual basis for the plea. Fed. R. Crim. P. 11(b). Substantially all of the required colloquy occurs prior to the defendant actually stating that he pleads guilty. *Frank*, 36 F.3d at 902. Finally, Rule 11 is not intended to "'establish a series of traps for imperfectly articulated oral remarks.'" *United States v. Cano-Varela*, 497 F.3d 1122, 1133 (10th Cir. 2007) (*quoting Frank*, 36 F.3d at 903).

Burnside ignores the fact that a principal purpose of the categorical bar against judicial participation in the plea bargaining process is to protect the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge. *Id*. Here, the district court was neither promoting a guilty plea nor a trial. The record clearly reflects the fact that the judge informed Burnside that without a substantial assistance motion

No. 08-4135                                          19

from the government, he would be sentenced to the mandatory minimum of life imprisonment. Burnside acknowledged that he heard and understood the judge's statements. The court further communicated the clear expectation that the government would not make a substantial assistance motion, and Burnside acknowledged that fact as well. The court never took a position with respect to Burnside's likelihood of success at trial, with or without the evidence Burnside sought to suppress. Finally, the court went on to inform Burnside that, if he pled guilty, he would be giving up his right to go to trial. It is patently obvious to us that the district court did not attempt to persuade or coerce Burnside into a plea of guilty.

Burnside advances the after-the-fact argument that, because there was no benefit to him from a change of plea, the judge's statements must have induced Burnside to plead guilty.[8] As previously stated, there is no evidence of any such coercion. Rather, the record reveals only the district court's carefully articulated, informational dialogue with Burnside concerning the various options available to him, along with possible consequences of each.

Finally, Burnside seemingly asserts that, because he changed his mind several times during the colloquy,

---

[8]  This is unlike *United States v. Casallas*, 59 F.3d 1173, 1177 (11th Cir. 1995), upon which Burnside relies, where the judge contrasted the fifteen-year mandatory minimum sentence that the defendant faced by going to trial with the ten-year mandatory minimum that he faced by pleading guilty.

concluding with his plea of guilty, there is something of a *de facto* Rule 11(c)(1) violation. This argument is without merit. "There is nothing inherently coercive about requiring a defendant to make *a* decision—either plead guilty or go to trial—so refusing to give a defendant more time to mull his option simply does not fall within the purview of the rule." *Cano-Varela*, 497 F.3d at 1133 (internal quotation marks omitted). Here, the district court provided a recess for Burnside to consider the consequences of pleading guilty. Later, when Burnside again claimed he was confused, the court offered a second recess and began to reschedule the hearing for the next day. Burnside then changed his mind again. Later, when Burnside changed his mind yet another time, the court advised, "Now, make sure this is what you want to do now because I have been very patient for the past 30 minutes." (Tr. 31.)

We find that the district court judge did not inappropriately influence Burnside's decision and that no violation of Rule 11(c)(1) occurred. Rather, the judge's comments were simply an attempt to resolve the inconsistent positions being taken by Burnside. Throughout the colloquy, the district court patiently limited its comments to relevant information of which Burnside should have been made aware and considered when making his choice.

### III. CONCLUSION

Burnside presented no evidence that police officers lacked probable cause for his arrest and the subsequent search of his home. We therefore find that the district

No. 08-4135                                              21

court correctly denied the motion to suppress evidence. Likewise, the district court did not violate Rule 11(c)(1) during the plea colloquy. Accordingly, we AFFIRM.

s/ R. Knox

12/28/09

12-4-09